UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JONATHAN R. HIBBARD,

        Plaintiff,

v.                                      CASE NO.: 8:06-cv-690-T-MAP

MICHAEL J. ASTRUE[1]
Commissioner of Social Security

        Defendant.

_____/

## **ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the Commissioner's decision denying disability insurance benefits. In summary, he claims the Administrative Law Judge ("ALJ") erred at step five of the sequential analysis by failing to consider all his impairments. After consideration, I find the ALJ's decision followed the regulatory scheme and is supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed and the Plaintiff's complaint is dismissed.[2]

    *A. Standard of Review*

To be entitled to disability insurance benefits a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental

---

[1] Michael J. Astrue replaced Jo Anne B. Barnhart as Commissioner of Social Security effective February 12, 2007.

[2] The parties consented to my jurisdiction (doc. 17). *See* 28 U.S.C. § 636(c).

impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the claimant can perform his past relevant work.  If the claimant cannot perform the tasks required or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do no other work in the national economy in view of his age, education, and work experience.  A claimant is entitled to benefits only if unable to perform other work.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987); 20 C.F.R. §§ 404.1520(f).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings.  *Richardson v. Perales*, 402 U.S. 389 (1971).  The ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists.  *See* 42 U.S.C. § 405(g); *Keeton v. Department of Health and Human Services*, 21 F.3d 1064 (11th Cir. 1994).  The Court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates

2

against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Further the Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066; *Jamison v. Bowen*, 814 F.2d 585 (11th Cir. 1987) (remand for clarification).

### B. Background

Plaintiff, who was fifty-five at his administrative hearing, is a former roofer who has sustained several falls. The most serious occurred a couple months before his disability insured status expired on September 30, 2002. On June 26, 2002, while at home, the Plaintiff fell and fractured his skull. That required an emergency craniotomy and ventriculostomy at a Sarasota hospital, a month's hospitalization, and three weeks more of inpatient rehabilitation therapy at the James A. Haley Veteran's Hospital.[3] He alleges he can no longer work due to back pain and the complications from his falls, particularly his last.[4] Although the ALJ concluded the Plaintiff could no longer work as a roofer, he nonetheless possesses the residual functional capacity for light work and could perform other work in the national economy.[5] Based on the testimony of a vocational

---

[3]   Plaintiff is a Viet Nam veteran who was severely wounded in that conflict.

[4]  The Plaintiff initially alleged a disability onset date of January 16, 1995, the date of a previous fall from a roof. But at the administrative hearing, his attorney amended the Plaintiff's onset date to August 1997 (R. 332-333; 168). In effect, that change conceded the Plaintiff possessed the residual functional capacity to return to work after his first fall. Despite this amendment, the ALJ applied the Plaintiff's initial disability date (R. 243).

[5]  The regulations define "light work" as: work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she

expert, the ALJ found the Plaintiff could meet the demands of a storage facility rental clerk, silver wrapper, and plastic products assembler.

C. *Discussion*

The threshold issue is whether the Plaintiff has sufficiently demonstrated he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). If my review were limited to the Plaintiff's condition from January 16, 1995 (his initial disability onset date), or August 1997 (his amended onset date), to just before his June 26, 2002, fall, the Plaintiff's proof, when measured against the appropriate standard of judicial review, clearly fails. However, the Plaintiff's June 26, 2002, fall and its serious consequences complicates the analysis. And it is this latter period that begins a couple of months before the last date insured (September 30, 2002) which is problematic.

Plaintiff's arguments covering this temporal juncture seem inconsistent. His first claim is easier to follow: the ALJ failed to analyze with sufficient specificity the effects of his seizure disorder, right-sided weakness, double vision, and balance problems. The second one is more confusing to understand: the ALJ improperly focused on his "condition after his insured status expired even though this relates to the issue of whether his disability continued, not whether it existed in the first place." *See* doc. 12 at p. 14. Irrespective of any purported conflict, a correct analysis requires consideration of the record evidence before and after the last date insured to see if the Plaintiff meets the durational demands. *See Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir.

---

can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *See* 20 C.F.R. § 404.1567(b)

4

1983) (medical opinion of treating physician after last insured date relevant to disability determination). *See also*: *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990) (citing with approval the rule that medical evaluations made after a claimant's insured status expires are relevant); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (same); *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987) (noting that medical evaluations made after a claimant's insured statues expires may be relevant to prove a previous disability).

As the Commissioner properly notes, the medical evidence prior to June 2002, fails to demonstrate the Plaintiff was incapable of work for any consecutive twelve-month period. The Plaintiff had impairments during this time, sought medical attention for those issues, and obtained relief in large part. *See* doc. 15, p. 9. His condition, however, grew more complex with his debilitating fall in June 2002.[6] The intense medical intervention required, the length of his hospitalization, and his vigorous inpatient rehabilitation confirmed the seriousness of his condition. But just as certain, the Plaintiff's condition improved over time. Importantly, none of these impairments, either individually or in combination prevented the Plaintiff from doing work in the national economy, at least when examined from the evidentiary perspective to be applied upon judicial review.

Admittedly, the most confusing impairment concerns Plaintiff's vision. As the ALJ

---

[6]   Plaintiff's continued use of alcohol after his discharge makes any analysis even more problematical. In 1996, Congress amended Title II of the Social Security Act to provide that a claimant will not be deemed "disabled" if drug addiction or alcoholism is a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535, 416.935 (1996). Thus, in order to be considered disabled for Social Security purposes, a plaintiff must prove that he has limitations absent the use of alcohol. *See* 20 C.F.R. § 404.1535, *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001). Plaintiff repeatedly told VA staff he consumed as much as six-pack of beer a day. Combined with all his medications, it is probably fair to say his consumption aggravated some of his impairments, namely, any cognitive deficits or balance problems.

accurately observed, the medical records "inexplicably" note the Plaintiff is "legally blind." *See* R. 606, 640.[7] However, no medical tests before his fall confirm this. After his June fall, the Plaintiff complained of double vision on several occasions (doc. 631, 633, 637, 640). Yet, at a January 8, 2003, eye exam, the Plaintiff had 20/20 vision with refraction (R. 618).[8] When tested for the resumption of his driving privileges in March 2004, his vision was "within normal limits." *See* R. 744. Based on this review, I find the ALJ's conclusion that Plaintiff's double vision had resolved (and implicitly within the ALJ's determination) within a year from his fall.

Lastly, Plaintiff asserts that the ALJ failed to evaluate his RFC as required by Social Security Ruling (SSR) 96-8p, namely: assessing his work-related abilities over a regular and continuing basis per a function-by-function review. In support, the Plaintiff points to a Fifth Circuit decision remanding a case for failing to meet SSR 96-8p's requirements. *See Myers v. Apfel,* 238 F.3d 617 (5th Cir. 2001) (ALJ must perform a function-by-function assessment of a claimant's capacity to perform sustained work-related physical and mental activities). Since ruling on *Myers*, the Fifth Circuit has held in an unpublished decision that an ALJ's reliance on the functional assessments made by a state examiner satisfies SSR 96-8p's demands. *See Onishea v. Barnhart,* 116 Fed. Appx. 1, 2 (5th Cir. 2004); *see also Beck v. Barnhart,* 205 Fed. Appx. 207 (5th Cir. 2006) (similar holding but ALJ relied on the assessments made by other medical reporters). Here, the ALJ, like the one in *Onishea*, incorporated the functional assessments made by state examiners into his RFC assessments. And the ALJ obviously considered the Plaintiff's mobility issues by allowing a

---

[7]  These comments that the Plaintiff is "legally blind" appear in medical histories.

[8]  At this examination, the Plaintiff with his prescriptive lenses tested 20/100 in his right eye and 20/200 with his left. But with refraction, he tested 20/20 in both. The VA issued the Plaintiff a new prescription and scheduled him for another annual visit.

frequent "sit/stand option," a finding the ALJ included in a hypothetical posed to the VE ( R. 251, 355).  In short, the ALJ satisfied SSR 96-8p's requirements.  *See Freeman v. Barnhart,* 220 Fed. Appx. 957, (11th Cir. 2007) (unpublished) (although ALJ "could have been more specific and explicit in his findings,"  the ALJ complied with ruling by posing hypothetical to VE which limited claimant to light exertional activity).

   *D.  Conclusion*

   For the reasons stated, it is

   ORDERED:

   1.  The Commissioner's decision denying benefits is affirmed.

   2.  The Clerk is directed to enter judgment for the Defendant and administratively close the case.

   DONE AND ORDERED at Tampa, Florida on August 15, 2007.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE


cc: Counsel of Record